UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH WATKINS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 17 C 8750 |
| | ) | |
| v. | ) | Magistrate Judge M. David Weisman |
| | ) | |
| VILLAGE OF MAYWOOD, OFFICER POPE PATTERSON, OFFICER DANIELS, OFFICER SMITH, and OFFICER PATTERSON, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff sues defendants pursuant to 42 U.S.C. § 1983 for conspiring to, violating, and failing to intervene to prevent the violation of his Fourth Amendment rights and for state-law conspiracy, malicious prosecution, respondeat superior, and indemnification. Defendants have filed a Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss plaintiff's complaint. For the reasons set forth below, the Court denies the motion.

**Facts**

On May 8, 2016, plaintiff's daughter called the Maywood Police Department because her brother, Xavier, was brandishing a weapon. (Compl. ¶ 10.) Defendant Pope Patterson (hereinafter "Pope") and defendant Patterson (hereinafter "Patterson") responded to the call and went to the second floor of plaintiff's home, where Xavier was located. (*Id.* ¶¶ 11-12.) When Patterson reached the top of the stairs, he grabbed Xavier, and a struggle ensued. (*Id.* ¶¶ 14-15.) Plaintiff and his wife, who were on the second floor landing, saw the struggle and told Xavier to

stop arguing with the police. (*Id.* ¶¶ 16-17.) Defendant Pope then told plaintiff and his wife to go downstairs, which they did. (*Id.* ¶¶ 18-19.)

Once plaintiff and his wife were downstairs, defendant Smith arrived and went to the second floor. (*Id.* ¶ 20.) Shortly thereafter, plaintiff and his wife heard loud noises from upstairs and Xavier shouting "'they choking me'" and "'I can't breathe.'" (*Id.* ¶ 21.) Plaintiff and his wife ran back to the top of the stairs where they could see Xavier lying on the floor of his bedroom with defendant Pope's knee on his chest, defendant Patterson's hands on his throat, and defendant Smith standing over them. (*Id.* ¶¶ 22-23.) When plaintiff protested, defendant Smith obstructed plaintiff's view of the bedroom. (*Id.* ¶ 26.)

A few moments later, defendant Patterson dragged Xavier from the bedroom in a headlock, and with defendants Pope and Smith, took Xavier downstairs. (*Id.* ¶ 30.) As he left the house, defendant Smith "placed his arm against the front door preventing Plaintiff and his wife from leaving their home and recording the event." (*Id.* ¶ 32.) Defendant Patterson told plaintiff he could retrieve Xavier from the Maywood Police Department, after Xavier had been processed. (*Id.* ¶ 36.)

Thereafter, plaintiff went to the Maywood Police Department to get his son. (*Id.* ¶ 38.) He saw defendant Pope there and told her he wanted to file a complaint against defendants. (*Id.* ¶ 41.) Defendant Pope refused to give plaintiff a complaint form, and subsequently told defendants Smith and Daniels to arrest plaintiff, which Pope later told plaintiff she did "simply because she could." (*Id.* ¶¶ 42-49.)

Later that day, defendant Smith drafted a police report stating that plaintiff was arrested for obstructing an officer in violation of 515 Ill. Comp. Stat. 5/1-200. (*Id.* ¶¶ 48, 52.) The report states that "Plaintiff attempted to prevent Officer A. Pope from assisting in the arrest of Xavier

2

by standing in front of her." (*Id.* ¶ 53.)[1] Defendant Pope signed a criminal complaint alleging that plaintiff "violated 515 ILCS 5/1-200 by failing to obey a lawful order of a peace officer through refusing to allow the arrest of his son." (*Id.* ¶ 54.) Plaintiff was in custody for seven hours before he was released on bond. (*Id.* ¶ 51.)

On June 1, 2016, a court found there was probable cause for plaintiff's arrest. (*Id.* ¶ 55.) At a bench trial on December 14, 2016, defendant Pope falsely testified that plaintiff prevented her from going upstairs to assist defendant Patterson. (*Id.* ¶ 56.) Plaintiff was acquitted of the charge (*id.* ¶ 58), and this suit followed.

**Discussion**

On a Rule 12(b)(6) motion to dismiss, the Court "'constru[es] the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [plaintiff's] favor.'" *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" but must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570).

In Count I, plaintiff asserts a § 1983 false arrest claim, *i.e.*, that he was arrested without probable cause. *See Neita v. City of Chi.*, 830 F.3d 494, 497 (7th Cir. 2016) ("To prevail on a

---

[1] The Court does not consider the police report defendants attached to their reply brief because issues raised for the first time on reply are waived. *See Mendez v. Perla Dental*, 646 F.3d 420, 423-24 (7th Cir. 2011).

false-arrest claim under § 1983, a plaintiff must show that there was no probable cause for his arrest."); *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 622 (7th Cir. 2010) (stating that the existence of "[p]robable cause is an absolute bar to a claim of false arrest asserted under the Fourth Amendment and section 1983"). "Probable cause exists if, at the time of the arrest, the facts and circumstances within the defendant's knowledge are sufficient" to make a prudent person believe that the suspect has committed an offense. *Stokes*, 599 F.3d at 622 (quotation omitted). Defendants contend that plaintiff was charged with obstructing a police officer and that the complaint essentially admits the facts supporting the charge. (*See* Defs.' Mot. Dismiss, ECF 14 at 4.)

Defendants are mistaken. The statute plaintiff says he was charged with violating, 515 Ill. Comp Stat. 5/1-200 (*see* Compl. ¶ 54; Defs.' Mot. Dismiss, ECF 14 at 4), does not prohibit obstruction of the duties of police officers. Rather, the statute makes it "unlawful for any person to resist or obstruct any officer or employee of the Department [of Natural Resources] in the discharge of his or her duties under th[e] [Fish and Aquatic Life] Code." 515 Ill. Comp. Stat. 5/1-200; *see* 515 Ill. Comp. Stat. 5/1-1; 515 Ill. Comp. Stat. 5/1-35.[2] If that is true, and for the purposes of this motion the Court must assume that it is, then there is nothing in the complaint that suggests there was probable cause to arrest plaintiff for this offense. For example, nowhere in the complaint is there a suggestion that Pope was employed by the Department of Natural Resources at the time of the alleged incident. Accordingly, the Court denies defendants' motion to dismiss Count I.[3]

In Count III, plaintiff asserts a Fourth Amendment claim for malicious prosecution. The Seventh Circuit has yet to decide what elements are required to state such a claim following the

---

[2] *Compare* 720 Il. Comp. Stat. 5/31-1 (statute criminalizing obstruction of a "peace officer").
[3] Plaintiff reiterates his false arrest claim in Count II, which is styled as claim for unlawful seizure. Because Count II is redundant of Count I, the Court dismisses it.

Supreme Court's recognition of it in *Manuel v. City of Joliet, Ill.,* 137 S. Ct. 911, 919 (2017). *See id.* ("If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment."). However, other circuits and lower courts in this district have held that such a claim requires allegations that defendants initiated a criminal proceeding against the plaintiff, without probable cause, which caused plaintiff to suffer a deprivation of liberty, and the proceeding ended in plaintiff's favor. *See, e.g., Hernandez-Cuevas v. Taylor,* 723 F.3d 91, 99, 101 (1st Cir. 2013) (collecting cases); *Kuri v. City of Chi.*, No. 13 C 1653, 2017 WL 4882338, at *7 (N.D. Ill. Oct. 30, 2017).

Citing to *Bentley v. City of East Moline*, No. 4:15-cv-04016-SLD-JEH, 2017 WL 1199728 (C.D. Ill. Mar. 30, 2017), defendants contend that a deprivation of liberty can be actionable as federal malicious prosecution only if it is "prolonged," and the seven hours plaintiff allegedly spent in custody does not meet that standard. (Defs.' Mot. Dismiss, ECF 14 at 5-6); *see Bentley*, 2017 WL 1199728, at *7. The *Bentley* court based its conclusion on the Seventh Circuit's decision in *Bianchi v. McQueen*, 818 F.3d 309 (7th Cir. 2016). *Bentley*, 2017 WL 1199728, at *7. The plaintiffs in *Bianchi* were the McHenry County State's Attorney and his associates, who were indicted and later arrested on charges of official misconduct based on what they claimed was false evidence, charges of which they were later acquitted. *Id.* at 314-16. They filed suit under § 1983 against the prosecutor and investigators who procured the indictments for, among other things, malicious prosecution. *Id.* at 321-22. The Seventh Circuit affirmed the district court's conclusion that defendants were entitled to qualified immunity on the claim because it was not well established that malicious prosecution was cognizable under the Fourth Amendment. *Id.* at 323. The court went on to say: "Finally, *even if* this claim were cognizable as a Fourth Amendment violation, McQueen and the investigators would *still* be

entitled to qualified immunity. Because the plaintiffs were immediately released on bond and were neither seized nor detained, they suffered no Fourth Amendment injury." *Id.* (emphasis in original).

We respectfully disagree with the *Bentley* court's conclusion that this dictum in *Bianchi* supports the proposition that detention must be "prolonged" to give rise to a Fourth Amendment malicious prosecution claim. As the court noted, the *Bianchi* plaintiffs were "never held in custody" after the legal proceeding was initiated, *i.e.*, the indictments were returned, but were "immediately released on bond." *Id.* at 315. Thus, the *Bianchi* dictum seems to stand for the proposition that a Fourth Amendment malicious prosecution claim requires a deprivation of liberty, rather than a deprivation of a particular length.

Accordingly, the court holds that to state a Fourth Amendment malicious prosecution claim, plaintiff must allege that defendants initiated a criminal proceeding against him, without probable cause, which caused plaintiff to suffer a deprivation of liberty, and the proceeding ended in plaintiff's favor. Read favorably to plaintiff, the complaint supports the inference that defendants signed a criminal complaint against plaintiff for violation of 515 Ill. Comp. Stat. 5/1-200, maliciously and without probable cause, which caused plaintiff to spend seven hours in custody, and plaintiff was ultimately acquitted of the charge. (Compl. ¶¶ 42-54, 58.) Therefore, defendants' motion to dismiss Count III and Count VI, the state-law malicious prosecution claim which has virtually identical elements, *see Cairel v. Alderden*, 821 F.3d 823, 834 (7th Cir. 2016) (stating that the elements of a malicious prosecution claim under Illinois law are: "(1) commencement or continuation of an original proceeding; (2) termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause; (4) malice; and (5) damages"), is denied.

In Counts V[4] and VII, plaintiff asserts federal and state-law conspiracy claims, respectively, which require allegations that "two or more persons act[ed] in concert to commit an unlawful act or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Cooney v. Casady*, 735 F.3d 514, 519 (7th Cir. 2013) (quotation and emphasis omitted); *Redelmann v. Claire Sprayway, Inc.*, 874 N.E.2d 230, 240 (2007) ("The elements of a civil conspiracy are: (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act.") (quotation omitted). Viewed favorably to plaintiff, the complaint supports the inference that the other defendant officers agreed with defendant Pope to arrest plaintiff for violation of 515 Ill. Comp. Stat. 5/1-200, knowing that there was no basis for doing so. Therefore, the Court denies defendant's motion to dismiss the conspiracy claims.[5]

Defendants' motion to dismiss Counts VII and VIII, for respondeat superior and indemnification, respectively, is premised on the assumption that the substantive state-law claims fail. Because those claims survive, the Court denies defendant's motion to dismiss Counts VII and VIII.

---

[4] Defendants contend the § 1983 failure-to-intervene claim in Count IV fails because the false arrest (Count I) and malicious prosecution (Count III) claims fail. Because the Court holds that the claims in Counts I and III survive, Count IV also survives.

[5] *Johnson v. Nichols*, No. 12 CV 5325, 2015 WL 5693114 (N.D. Ill. Sept. 28, 2015) does not dictate a different result. The court in that case granted summary judgment for defendants on a civil conspiracy claim because "the record [was] devoid of facts" to support it. *Id.* at *8. The court did not, as defendants claim, find that "plaintiff had failed to allege sufficient facts to support his conspiracy claim." (Defs.' Reply, ECF 26 at 11.)

**Conclusion**

For the reasons set forth above, the Court dismisses Count II as redundant of Count I and denies defendants' motion to dismiss [14].

SO ORDERED.				ENTERED:  April 20, 2018


_M. David Weisman_
**M. David Weisman**
**United States Magistrate Judge**